1    UNITED STATES DISTRICT COURT

2    DISTRICT OF CONNECTICUT

3
     UNITED STATES OF AMERICA,   )
4                   Plaintiff,   )            NO: 3:15CR111(MPS)
                                 )
5    vs.                         )
                                 )            June 23, 2015
6    HEATHER ALFONSO,            )
                   Defendant.    )            PLEA
7    _____

8
                              450 Main Street
9                        Hartford, Connecticut

10   B E F O R E:
              THE HONORABLE MICHAEL P. SHEA, U.S.D.J.
11

12   A P P E A R A N C E S:

13   For the Plaintiff :        DOUGLAS P. MORABITO, AUSA
                                RICHARD MOLOT, AUSA
14                              United States Attorney's Office
                                157 Church Street, 25th Floor
15                              New Haven, CT 06510

16   For the Defendant:         RYAN McGUIGAN, ESQUIRE
                                Rome McGuigan, P.C.
17                              One State Street
                                13th Floor
18                              Hartford, CT 06103

19

20

21

22

23
     Court Reporter:            Martha C. Marshall, RMR, CRR
24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.

1          THE COURT:  Please be seated.

2          We have a hearing today in United States versus

3    Heather Alfonso.  Let's begin with appearances of counsel,

4    starting with the Government, please.

5          MR. MORABITO:  Good afternoon, Your Honor.  Doug

6    Morabito with Rick Molot on behalf of the Government.

7          THE COURT:  Thank you.

8          MR. MORABITO:  Attorney Ryan McGuigan for

9    Ms. Alfonso who appears at my left.

10          THE COURT:  Very well.  Thank you.  Good afternoon.

11          My understanding is that we're here because

12    Ms. Alfonso wishes to waive indictment and plead guilty to a

13    one count information that charges her with receiving

14    kickbacks in relation to a Federal health care program, in

15    violation of Title 42, United States Code, Section

16    1320a-7b(b)(1).  Is that true?

17          MR. McGUIGAN:  Yes, Your Honor.

18          THE COURT:  Ms. Alfonso, the first thing I want to

19    tell you today is to take your time.  I'm not in a hurry and

20    it's very important to me that you completely understand

21    everything that's going on here because this is an important

22    day.  And I also want you to know that if at any time you

23    need an opportunity or time to speak with your lawyer, you

24    just let me know that and I will give you all the time you

25    need.

1            Do you understand that?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Ma'am, I'm going to have to ask you a

4   number of questions today while you're under oath so that I

5   can be assured that your answers to my questions are valid

6   and that ultimately your guilty plea is a valid plea.  So if

7   you don't understand any of my questions, please let me know

8   and I will reword the question.

9            At this time if you would stand and raise your right

10  hand, please.

11            **H E A T H E R   A L F O N S O**,

12  having been duly sworn by the Clerk, was examined and

13  testified on her oath as follows:

14            THE COURT:  Ma'am, you can be seated.

15            First thing, ma'am, do you understand that now that

16  you're sworn to tell the truth, your answers to my questions

17  can subject you to the penalties for perjury or for making a

18  false statement if you willfully do not answer truthfully?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  I'm going to go over certain rights that

21  you have before we go any further.

22            First thing is you have a right to remain silent.

23  You're not required to say anything today.  You're not

24  required to answer any of my questions.  If you do speak, any

25  statement you make can and probably will be used against you

1   if this matter were to go to trial.  And if you begin to make

2   a statement, you can stop at any time.

3        You also have a right to counsel.  That is, you have

4   a right to be represented by an attorney both at trial and at

5   every stage of the criminal proceedings against you.  You're

6   currently represented by Attorney Ryan McGuigan, but if in

7   the future you were not represented by him and you could not

8   afford to hire counsel the Court could appoint counsel for

9   you at no cost to you.

10        Do you understand that?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  If you were to be placed in custody, you

13   would have a right to be considered as a candidate for

14   release.  You would have a right to a hearing at which you

15   could contest the Government's request to have you detained

16   without bond.  You would also be able to argue that you have

17   sufficient financial resources to assure your appearance in

18   court.

19        Do you understand these rights?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  Have you been provided with a copy of

22   the information which is the document that lists the charge

23   the Government proposes to make against you?

24        THE DEFENDANT:  Yes, Your Honor.

25        THE COURT:  Have you had a chance to read that

1    document?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  And do you believe that you understand

4    the charge the Government proposes to make against you?

5            THE DEFENDANT:  Yes, I do, Your Honor.

6            THE COURT:  So instead of an indictment, the

7    Government proposes to bring this charge against you by way

8    of filing a document that's called an Information.  You have

9    a right under our Constitution to be charged by an Indictment

10   issued by a Grand Jury, but you can choose to waive that

11   right and agree to being charged by an Information filed by

12   the prosecutor.  Unless you waive your right to Indictment,

13   you cannot be charged with a felony unless a Grand Jury finds

14   by a return of an Indictment that there is probable cause to

15   believe that a crime has been committed and that you're the

16   person who committed it.

17           What is a Grand Jury?  A Grand Jury is a body of

18   people comprised of at least 16, and not more than 23 people.

19   At least 12 of the grand jurors have to find that there's

20   probable cause to believe that you committed the crime with

21   which you're charged before you can be indicted.  The Grand

22   Jury might or might not choose to indict you.  If you waive

23   indictment by a Grand Jury, the case is going to proceed

24   against you on the U.S. Attorney's Office Information just as

25   though you had been indicted.

1          Now, have you discussed waiving your right to

2    indictment by a Grand Jury with your lawyer?

3          THE DEFENDANT:  Yes, Your Honor, I did.

4          THE COURT:  And do you understand your right to be

5    indicted by a Grand Jury?

6          THE DEFENDANT:  Yes, I do, Your Honor.

7          THE COURT:  Have any threats or promises been made

8    to you to induce you to waive your right to be indicted?

9          THE DEFENDANT:  No, Your Honor.

10         THE COURT:  And do you wish to waive your right to

11   indictment by a Grand Jury?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Does either counsel know of any reason

14   that she should not waive that right?

15         MR. MORABITO:  No, Your Honor.

16         MR. McGUIGAN:  No, Your Honor.

17         THE COURT:  Do we have a signed waiver form?

18         MR. MORABITO:  One's been prepared and provided to

19   counsel, Your Honor.

20         THE COURT:  Ma'am, if you're prepared to waive your

21   right to be indicted, you should go ahead and sign the form

22   now.

23         MR. McGUIGAN:  May I approach?

24         (Hands.)

25         THE COURT:  Thank you.

1          All right.  I make a finding that the Waiver of
2     Indictment has been knowingly and voluntarily made.  The
3     waiver is accepted.  The Information will be filed.  And the
4     case will be assigned case number 15CR111, United States
5     versus Alfonso.  The waiver should be filed.
6          Do you have the signed information?
7          MR. MORABITO:  I do, Your Honor.  May I approach?
8          THE COURT:  Yes.
9          MR. MORABITO:  Thank you.
10         THE COURT:  You can give it right to the Clerk and
11    it will be filed.
12         MR. MORABITO:  Thank you.
13         THE COURT:  All right, ma'am.  Let's kind of start
14    with the basics.  Let me get some background information
15    about you.
16         What is your full name?
17         THE DEFENDANT:  Heather Ann Alfonso.
18         THE COURT:  And have you ever used any other
19    names?
20         THE DEFENDANT:  My maiden name.
21         THE COURT:  Which is?
22         THE DEFENDANT:  Marrone.
23         THE COURT:  Marrone.
24         And are you a United States citizen?
25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And how old are you?

2          THE DEFENDANT:  42.

3          THE COURT:  How far did you go in school?

4          THE DEFENDANT:  I have a master's degree.

5          THE COURT:  In?

6          THE DEFENDANT:  Nursing.

7          THE COURT:  And have you had any difficulty

8   communicating with your lawyer, Mr. McGuigan, for any

9   reason?

10         THE DEFENDANT:  No, Your Honor.

11         THE COURT:  Are you now or have you recently been

12  under the care of a physician, a psychiatrist, a social

13  worker, or a counselor?

14         THE DEFENDANT:  I have a physician.

15         THE COURT:  And is that for matters other than

16  mental health matters?

17         THE DEFENDANT:  Yes.

18         THE COURT:  In the past 48 hours, have you taken any

19  narcotic drugs, any medicine, or any pills?

20         THE DEFENDANT:  I have taken medication, yes, Your

21  Honor.

22         THE COURT:  I don't mean to pry, but I do need, as

23  part of determining whether you're competent to plead, to

24  know what types of medication.

25         THE DEFENDANT:  I've taken Musinax.  I took Vicodin

1   on Sunday for neck pain.

2          THE COURT:  Okay.  Anything else in the last 48

3   hours?

4          THE DEFENDANT:  Vitamins.

5          THE COURT:  Okay.

6          THE DEFENDANT:  Neurontin which I'm prescribed.

7          THE COURT:  What is that to treat?

8          THE DEFENDANT:  For Restless Leg Syndrome.

9          THE COURT:  For Restless Leg Syndrome?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Anything else?

12          THE DEFENDANT:  Aspirin.

13          THE COURT:  And that's the list?

14          THE DEFENDANT:  I believe so, yes.

15          THE COURT:  And in the last 48 hours, have you drunk

16   any alcoholic beverages?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  As you sit here today, is your mind

19   clear?

20          THE DEFENANT:  Yes, Your Honor.

21          THE COURT:  You understand what's going on so far?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Mr. McGuigan, for any reason have you

24   had any difficulty in communicating with your client?

25          MR. McGUIGAN:  No, Your Honor.

1          THE COURT:  Have you had enough time, sir, to permit

2    meaningful discussion with her about her case?

3          MR. McGUIGAN:  Yes, Your Honor.

4          THE COURT:  And do you believe she understands the

5    rights she'll be giving up by pleading guilty today?

6          MR. McGUIGAN:  I do.

7          THE COURT:  Do you have any reason to doubt her

8    competence to plead guilty today?

9          MR. McGUIGAN:  No, Your Honor.

10          THE COURT:  Ma'am, have you had enough opportunity

11    and enough information to discuss your case with Attorney

12    McGuigan?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Are you satisfied to have him represent

15    you in these proceedings?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Is there any way in which you've not

18    been satisfied with his representation?

19          THE DEFENDANT:  No, Your Honor.

20          THE COURT:  The first and most important thing I

21    want to tell you about the rights you'll be giving up, if you

22    choose to plead guilty, is that in our system a defendant

23    does not have to plead guilty even if she is guilty.  What

24    does that mean?  Well, under our system, the Government has

25    the burden of proving the guilt of a defendant beyond a

1    reasonable doubt.  If the Government is unable to meet that

2    burden, the jury has the duty to find the defendant not

3    guilty even if she is, in fact, guilty.  Do you understand

4    that?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  So what happens sometimes in a

7    courtroom, and I've seen it happen, is that a jury returns a

8    verdict of not guilty, even though everybody who was sitting

9    there watching the trial thought the defendant was guilty.

10   What the jury was saying in that type of a case is not that

11   it thought the defendant was innocent but, rather, that it

12   found that the Government had failed to meet its burden of

13   proving the defendant's guilt beyond a reasonable doubt.

14           Do you understand that?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  So that's why I said that even if you're

17   guilty, you still have a choice.  You can plead guilty, as

18   you have indicated you wish to do, or you can say to the

19   Government, in effect, prove it.  Prove my guilt beyond a

20   reasonable doubt.  And the way you exercise that choice of

21   saying to the Government prove it is to say not guilty when

22   the Clerk of the Court asks you how you wish to plead in

23   about 20, 25 minutes.

24           Do you understand?

25           THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Now, if you were to plead not guilty,

2  under our Constitution and federal laws, you'd be entitled to

3  a speedy public trial by a jury with the assistance of

4  counsel both at the trial and at every stage of the

5  proceedings on the charge contained in the Information.

6          Do you understand?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And as I said, although you currently

9  have counsel, if for some reason in the future you didn't and

10  you couldn't afford to hire counsel, counsel would be

11  appointed at no cost to you.

12          Do you understand that?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Now, if you were to go to trial, at the

15  trial you would be presumed innocent and the Government would

16  have to overcome that presumption and prove your guilt by

17  competent evidence and beyond a reasonable doubt.  You would

18  have no burden to prove that you were innocent.  If the

19  Government were to fail, the jury would have the duty to find

20  you not guilty.

21          Do you understand?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  During the trial, the witnesses for the

24  Government would have to come to the courtroom.  They'd have

25  to testify in your presence and in the presence of your

1    counsel.  Your counsel would have the right to cross-examine

2    those witnesses, to object to evidence offered by the

3    Government, to offer evidence on your behalf, and to use a

4    subpoena to require the attendance of witnesses to testify at

5    the trial in your behalf.  Do you understand?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  At the trial, while you would have the

8    right to testify, if you wanted to testify, you could not be

9    required to testify.  Under our Constitution, a defendant in

10   a criminal case cannot be forced to take the witness stand

11   and say anything that could be used to show that she's guilty

12   of the crime with which she's charged.  If you decided not to

13   testify, I would instruct the jury that you were exercising

14   your constitutional right and that it could not hold your

15   decision not to testify against you.  Do you understand?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  Now, if you decide to plead guilty, I'm

18   going to have to ask you questions about what it is you did

19   to satisfy myself that there's a factual basis for your

20   guilty plea.  And you're going to have to answer my questions

21   and admit your guilt.  So you'll be giving up the right that

22   I just talked about.  That is, the right not to say anything

23   that would show that you're guilty of the crime with which

24   you're charged.

25           If you plead guilty and I accept your plea as a

1    valid one, you will be giving up your constitutional right to

2    a trial and all the other rights I just discussed.   There

3    will not be a trial.

4            Do you understand?

5            THE DEFENDANT:   Yes, Your Honor.

6            THE COURT:   And the offense to which you intend to

7    plead guilty is a felony.   If your plea's accepted, you'll be

8    found guilty of a felony.   That could deprive you of

9    important civil rights, such as the right to vote, the right

10   to hold public office, the right to serve on a jury, and the

11   right to possess firearms.   A felony conviction could also

12   prevent you from obtaining certain jobs and professional

13   licenses.   I should underscore that especially in the

14   healthcare field there could be Medicare debarment

15   proceedings.

16           Do you understand what those are?

17           THE DEFENDANT:   Yes, Your Honor.

18           THE COURT:   You told me you're a citizen and I

19   believe you, but I'm still required to tell you if you were

20   not a citizen you could be deported and denied immigration

21   benefits, including the ability to return to this country as

22   a result of your guilty plea.

23           Finally, and nobody expects this is going to happen,

24   but I'm still required to tell you this.   Your guilty plea

25   today could work to your disadvantage if, at some point in

1   the future, you were found guilty of another crime, because

2   there's a possibility that you could receive a more severe

3   penalty at that time as a result of this guilty plea and

4   conviction.

5            Mr. McGuigan, have you discussed with your client

6   the collateral consequences of pleading guilty to this

7   charge?

8            MR. McGUIGAN:  I have, Your Honor.

9            THE COURT:  Does that include the discussion about

10   the possibility of debarment?

11            MR. McGUIGAN:  It has.  And it's also included my

12   law partner, Mary Alice Leonhardt, who specalizes, as Your

13   Honor knows, in the area of healthcare.

14            THE COURT:  Ma'am, do you understand all the rights

15   and possible consequences of a guilty plea that I reviewed

16   with you?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  Do you have any questions for me or for

19   your lawyer at this time?

20            THE DEFENDANT:  No, Your Honor.

21            THE COURT:  Are you willing to give up your right to

22   a trial and the other rights I just discussed?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  Do you have the Plea Agreement there?

25            MR. McGUIGAN:  I do, Your Honor.

1          THE COURT:  Ma'am, have you had a chance to read the

2   Plea Agreement?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And do you understand it?

5          THE DEFENDANT:  To the best of my ability I do, Your

6   Honor.

7          THE COURT:  Have you had enough time to discuss it

8   and go over it with Attorney McGuigan?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you have any further questions for

11   him that you want to discuss now outside of my presence about

12   the agreement?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  All right.  And, Mr. McGuigan, have you

15   gone over carefully with your client the terms of the Plea

16   Agreement?

17          MR. McGUIGAN:  Yes, Your Honor.

18          THE COURT:  Are you satisfied that she fully

19   understands it?

20          MR. McGUIGAN:  I am.

21          THE COURT:  Thank you.

22          Ma'am, if you're ready and willing to sign the Plea

23   Agreement you should do so now.

24          If the Government has signed, you can bring it up.

25          MR. MORABITO:  May I approach, Your Honor?

1          THE COURT:  Yes, please.

2          (Hands.)

3          THE COURT:  Thank you.  All right.

4          Attorney Morabito, if you would go ahead and

5     summarize the terms of the Plea Agreement.

6          Ms. Alfonso, what's going to happen now is the

7     prosecutor is going to outline the terms of the Plea

8     Agreement and I want you to listen carefully to what he says,

9     because when he's done I'm going to ask you if you agree that

10    his summary is an accurate reflection of the agreement that

11    you've entered into with the United States Government.

12         Go ahead.

13         MR. MORABITO:  Your Honor, does Your Honor want me

14    to --

15         THE COURT:  You don't need to cover the elements

16    right now.  And you also don't need to cover the maximum

17    penalties.

18         MR. MORABITO:  Thank you, Your Honor.

19         Page one outlines the elements.

20         Page two, there's a discussion about the penalties.

21         At the bottom of page two, Your Honor, there's a

22    discussion of the Sentencing Guidelines which I know Your

23    Honor will discuss which basically indicates that the Court's

24    required to consider any applicable Sentencing Guidelines as

25    well as other factors under 18 U.S.C. Section 3553(a) in

1    tailoring an appropriate sentence in this case and that,

2    notably, the Court's not bound by the Plea Agreement.

3            On page three, there's a discussion of acceptance of

4    responsibility.  And briefly, Your Honor, the Government's

5    agreeing to recommend that the Court reduce by two levels

6    Ms. Alfonso's adjusted offense level based on her prompt

7    recognition and affirmative acceptance of personal

8    responsibility for the offense in this case.

9            Additionally, the Government intends to file an

10   additional one level -- additional motion for another one

11   level reduction at the time of sentencing.

12           The bottom of page three and continuing on to page

13   four, there's a discussion of what the parties believe to be

14   the applicable Guideline stipulation.

15           Just briefly, Your Honor.  The parties believe

16   there's a base offense level of 8.  The 16 level increase due

17   to the value of the improper benefit conferred in this

18   particular case to --

19           THE COURT:  Can I ask you just briefly about that,

20   to explain why that is just in light of the -- I don't know

21   anything about the facts -- in light of the Information.

22   It's in the Information which refers to an $83,000 amount.  I

23   realize we're probably talking about two different things,

24   but if you could lay that out for me.

25           MR. MORABITO:  Certainly, Your Honor.  Your Honor's

1    correct, the amount of money that was paid to Ms. Alfonso was

2    approximately $83,000.  When you look at the applicable

3    Sentencing Guidelines and in the commentary and case law, it

4    indicates that in determining -- you don't use the value of

5    the kickback as the basis for any Guideline enhancement.

6    What you actually look at is the value of what that kickback

7    caused.  And in this particular case, the loss to Medicare as

8    well as to various private insurers is approximately 1.6

9    million dollars.  In other words, that's what Ms. Alfonso

10   prescribed -- the drugs she prescribed based on the amount of

11   money she received by the drug manufacturer.

12          So essentially, Judge, the Guidelines say that you

13   don't use the amount that was paid but what that

14   value -- what that caused her to do.

15          THE COURT:  Understood.

16          And, as I understand it, there's an agreement that

17   the value of improper benefit to be conferred exceeded a

18   million dollars.

19          MR. MORABITO:  That's my understanding, yes, Your

20   Honor.

21          THE COURT:  Go ahead.

22          MR. MORABITO:  So there's a -- with three points off

23   for acceptance of responsibility, there's a total offense

24   level of 23.  The parties believe that Ms. Alfonso is a

25   Criminal History Category I, which results in a Guideline

1   range of 46 to 57 months, and a fine range of 10,000 to

2   $100,000, as well as a term of supervised release of one year

3   to three years.

4           Ms. Alfonso has reserved all her rights through

5   counsel to argue for any departure, variance, or

6   Non-Guidelines sentence that they see fit at the time of

7   sentencing.

8           At the bottom of page four on to page five, there's

9   a discussion of certain rights she's waiving as part of this

10  Plea Agreement.  Specifically, Your Honor, Ms. Alfonso has

11  agreed not to appeal or collaterally attack her conviction in

12  any proceeding, including but not limited to a 2255 or

13  Section 2241 motion, nor would she pursue any collateral

14  attack as long as the sentence doesn't exceed 46 months

15  imprisonment, three years of supervised release, $100,000

16  fine, even if the Court were to impose such a sentence based

17  on different analysis.

18          THE COURT:  Mr. Morabito, let me interrupt you for a

19  minute.

20          Ms. Alfonso, let me ask you to focus on the bottom

21  of page four of the Plea Agreement for a moment.  There's a

22  paragraph there that's entitled Waiver of Right to Appeal and

23  Collaterally Attack Conviction and Sentence.  I just want to

24  underscore that for you for just a minute.

25          Effectively what that is saying if, when we get to

1    sentencing, and after I've considered all the information

2    that I will consider before we get to sentencing, which I

3    don't know anything about right now, I ultimately conclude

4    that a fair and just sentence in this case is something less

5    than or equal to 46 months, a three-year term of supervised

6    release, and $100,000 fine, then effectively the case is

7    over.  You're not going to be able to go to the Court of

8    Appeals and say, you know Judge Shea made a mistake with the

9    sentence.  Because even if I did, you're giving up the right

10   to appeal.

11            Do you understand that?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  Go ahead, Mr. Morabito.

14            MR. MORABITO:  Thank you, Your Honor.

15            And then on page five covers the waiver of the right

16   to indictment.  It's also covered on page five the waiver of

17   trial rights and the consequences of a guilty plea in the

18   event it's accepted here today.

19            On page six there's a paragraph discussion about

20   waiver of statute of limitations.  Additionally, there's a

21   discussion about the fact that Ms. Alfonso's acknowledging

22   that she's entering into this agreement and is pleading

23   guilty freely and voluntarily because she is, in fact, guilty

24   of the offense charged in the information.

25            At the bottom of page six and on to page seven, the

1    defendant's acknowledging that the agreement is limited to

2    the undersigned parties, that is, the U.S. Attorney's Office

3    and herself, and can't bind any other federal authority or

4    any other state or local authority.

5            On page seven there's a discussion of the collateral

6    consequences which Your Honor has previously covered with

7    Ms. Alfonso.  Additionally, there's two paragraphs which

8    indicates that if Ms. Alfonso's guilty plea is accepted by

9    the Court today, it satisfies her criminal liability here in

10   Connecticut as a result of her participation in the conduct

11   underlying the Information.

12           Additionally, at the bottom of page seven it

13   explicitly states that Ms. Alfonso acknowledges there's no

14   other promises, agreements, or conditions entered into other

15   than those in this Plea Agreement and none would be unless

16   set forth in writing.

17           And page eight is a signature page.

18           And nine and ten is a rider concerning restitution,

19   Your Honor.

20           THE COURT:  And restitution is mandatory in this

21   case, Mr. Morabito?

22           MR. MORABITO:  I believe it is, yes, Your Honor.

23           THE COURT:  So that means effectively that there is

24   very likely to be, as long as I receive the information to

25   compile the award of restitution, there's very likely to be a

1    monetary order of restitution in addition potentially to a

2    fine.

3            All right.  Ms. Alfonso, does the written Plea

4    Agreement, as outlined or summarized by the prosecutor,

5    Mr. Morabito, fully and accurately reflect your understanding

6    of the agreement you've entered into with the Government?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Other than the promises that are

9    contained in the written agreement, has anyone made any other

10   promises or representations to you that have caused you to

11   plead guilty?

12           THE DEFENDANT:  No, Your Honor.

13           THE COURT:  Has anyone made any threats against you

14   or is anyone forcing you in any way to plead guilty?

15           THE DEFENDANT:  No, Your Honor.

16           THE COURT:  Are you pleading guilty today of your

17   own free will and because you are, in fact, guilty?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  Has anyone made any promises to you as

20   to what your sentence will be?

21           THE DEFENDANT:  No, Your Honor.

22           THE COURT:  It's important for you to keep in mind

23   no one, including me, who is responsible for sentencing you

24   knows what your sentence will be really until the day it's

25   imposed on the day of sentencing.

1          All right.  So with that, the Plea Agreement can be
2     filed.  And I'll go ahead and accept the Plea Agreement which
3     simply means that I find that in no way does the charge
4     diminish the seriousness of the offense conduct, at least
5     based on the way it's been described.
6          The Plea Agreement, as Mr. Morabito pointed out, is
7     not binding on me in any way.  And I'll get to that in a
8     minute.
9          All right.  So let me begin then, Ms. Alfonso, by
10    discussing with you the maximum penalties that apply if you
11    were to plead guilty today to Count One of the Information.
12         If you plead guilty to that count, I could sentence
13    you, as a maximum sentence, to imprisonment for as many as
14    five years, a term of supervised release of up to three years
15    following any term of incarceration.  If you were to violate
16    any condition of supervised release, I could then sentence
17    you to additional time in prison for as much as two years
18    with no credit for time already spent on supervised release.
19    So under a worse case scenario, that could result in your
20    serving a term of imprisonment that exceeds the maximum
21    statutory term provided for your offense of conviction.
22         I could impose a fine of -- well, the statute itself
23    provides for a fine up to $25,000, but under the alternative
24    fine provision I can impose the greatest of $250,000, twice
25    the gross gain from your offense or twice the gross loss from

1   your offense.  So effectively the maximum fine here is going

2   to be either $250,000 or more, if twice the gross gain or

3   twice the gross loss exceeds $250,000.

4           In addition to the possibility of your receiving

5   these maximum penalties, you should know that I'm required to

6   impose certain mandatory minimum penalties as part of your

7   sentence.

8           First of all, I'm required to impose what's called a

9   special assessment in the amount of $100.  I'm also required

10  to impose restitution in this case.  I don't know what the

11  amount of restitution will be, but I'm required to impose it.

12          There's some other matters you should know about

13  your sentence.  There is no parole in the federal prison

14  system.  So if you are sentenced to prison, you will not be

15  released on parole.

16          Your sentence could be increased up to the statutory

17  maximum for a variety of reasons.  For example, again, no

18  one's expecting this, but I'm required to advise you of this.

19  If it were determined that you had a serious criminal history

20  or that you committed this offense while you were on parole

21  or probation, or that you engaged in other criminal conduct

22  during the commission of this offense, and if any of those

23  matters were brought to my attention, I could decide to

24  increase your sentence because of those matters and you would

25  have no right to withdraw your guilty plea.

1          I want to talk to you now about the sentencing

2   process.  Before sentencing, you, your lawyer, and the

3   prosecutor and I will all receive a report prepared by the

4   United States Probation Office.  That report will be helpful

5   to me in determining the appropriate sentence for you.  The

6   report will recommend a sentencing range based on the United

7   States Sentencing Guidelines and the Policy Statements set

8   forth in those Guidelines.  You, Mr. McGuigan, and

9   Mr. Morabito, on behalf of the Government, will all have an

10  opportunity to object to what's in the Presentence Report.

11  The report will also consider whether any upward or downward

12  departures from the suggested sentencing ranges are

13  warranted, and you and your lawyer, the Government's lawyer

14  will also all be able to argue for or against departures

15  whether or not they're actually mentioned in the report.

16         Let me start with the Sentencing Guidelines.  It's

17  important for you to understand that I have to consider the

18  Sentencing Guidelines and the Policy Statements in the

19  Guidelines in determining what your sentence is, but I'm not

20  bound by the Guidelines.

21         Also, if there are factual disputes about matters

22  that are relevant to your sentence, I want to talk to you

23  about how those disputes will be resolved.  Those disputes,

24  first of all, will be resolved by me, not by a jury, because

25  there's not going to be a trial.  But if there are

1   effectively disputes that are related to sentencing, I will

2   resolve those disputes.  And I will do so based on a standard

3   that's called the preponderance of the evidence, which is a

4   lower standard of proof than the one that applies in a

5   criminal trial which is beyond a reasonable doubt.

6          Now, after I determine what the relevant facts are

7   concerning your sentence and determine whether any departures

8   from the Guidelines are appropriate, it's likely that I will

9   indicate what the appropriate sentencing range or ranges for

10  you are under the Guidelines.  As I said, I'll consider those

11  ranges, but I'm not bound by them and ultimately I will

12  impose a sentence that's based on consideration not only of

13  the Guidelines range, but of all the factors listed in the

14  federal statute that governs federal sentencing.  In other

15  words, I could give you a sentence that falls within the

16  Guidelines range or outside of the Guidelines range.  Either

17  way, you will have no right to withdraw your guilty plea.

18         A few additional points about sentencing.  First,

19  until the Presentence Report is prepared and you, your

20  lawyer, and the prosecutor have had an opportunity to comment

21  on it, object to it, and until I've ruled on any disputed

22  issues, you're not going to know with any certainty what the

23  Guidelines range will be, whether there will be grounds to

24  depart from the Guidelines range, and what your sentence will

25  be.  Second, as I mentioned before, I'm not bound by any

1    agreement between you and the Government on any issues set

2    forth in your Plea Agreement, including as to how the

3    Guidelines could apply.  If I choose not to accept those

4    agreements that are set forth in your Plea Agreement, you

5    will still be bound by your guilty plea.  You will have no

6    right to withdraw that plea.  And I could impose a sentence

7    that's more severe than you might expect.

8            So I've been talking for a while.  Let me ask you,

9    do you understand what I've said?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT;  Do you any questions for me or your

12   lawyer at this time?

13           THE DEFENDANT:  No, Your Honor.

14           THE COURT:  Okay.  Have you gone over with your

15   lawyer the maximum penalties, the operation of the

16   Guidelines, and how they might apply to you?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Has he given you some estimate of what

19   your sentence might be?

20           THE DEFENDANT:  Only what was in the paperwork.

21           THE COURT:  In the Plea Agreement?

22           THE DEFENDANT:  Yes.

23           THE COURT:  What's important for you to understand

24   is that I'm not bound by his estimate, the Government's

25   estimate, or what's in the Plea Agreement.  Do you understand

1    that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Now, Mr. McGuigan, have you gone over

4    carefully with your client the maximum penalties, the

5    operation of the Guidelines, and the statutory factors the

6    Court must take into account at sentencing?

7              MR. McGUIGAN:  I have, Your Honor.

8              THE COURT:  Have you told her that she will not be

9    allowed to withdraw her guilty plea if I do not follow your

10   recommendation concerning sentencing?

11             MR. McGUIGAN:  I have, Your Honor.

12             THE COURT:  Thank you.

13             All right.  Ms. Alfonso, we've come to the part of

14   the proceeding where I'm going to ask the Government to

15   outline the elements of the offense.  And the elements are

16   the critical facts that the Government would have to prove to

17   a jury if the case were to go to trial.  And then the

18   Government's going to talk about the evidence that it would

19   introduce if the case were to go to trial.  And specifically,

20   what they're going to talk about is what it is that you did

21   that makes you guilty of this offense.

22             I want you to listen carefully to what Mr. Morabito

23   says, because when he's done I'm going to ask you questions

24   about what you did that makes you guilty of this offense.

25   You're not required to agree with anything he says, but I'm

1  going to ask you if there's anything you want to correct

2  about what he says and the like.  So it's important to listen

3  to what he has to say.

4        Mr. Morabito.

5        MR. MORABITO:  Certainly, your Honor.  I'll start

6  with the elements, Judge.

7        If the matter were to go to trial, the Government

8  would have to prove beyond a reasonable doubt:

9        (1) That Ms. Alfonso asked for or received any

10  remuneration, including any kickback, bribe, or rebate,

11  directly or indirectly, openly or secretly, in cash or in

12  kind;

13        (2)  That the payment asked for or received was in

14  return for purchasing, leasing, ordering, or arranging for or

15  recommending purchasing, leasing, or ordering, any good,

16  facility, service, or items that could be paid for, in whole

17  or in part, by a Federal health care program; and finally

18        (3)  That Ms. Alfonso did so knowingly and

19  willfully.

20        Judge, if the matter were to go to trial, the

21  Government's evidence would consist of testimonial and

22  documentary evidence which would establish beyond a

23  reasonable doubt that Ms. Alfonso is an Advanced Practiced

24  Registered Nurse who, at all times relevant to this matter,

25  was employed at Comprehensive Pain and Headache Treatment

1   Center which is located in various cities or towns in

2   Connecticut.  The Treatment Center is a pain management

3   clinic that is focused on treating patients with chronic pain

4   and persistent migraines.

5          As part of her employment, as well as part of her

6   being an Advanced Practiced Registered Nurse, she had a DEA

7   license to prescribe controlled substances and she, in fact,

8   did prescribe controlled substances as part of her employment

9   with the Treatment Center.

10          The evidence would further establish, Your Honor,

11   that there's a cutting edge drug that was being used to treat

12   breakthrough cancer pain.  It's called Subsys, which is

13   manufactured by a company call Insys Therapeutics, and it was

14   being prescribed by Ms. Alfonso in an alarming rate.

15          The evidence would establish that a review of

16   prescriptions for Subsys written by providers, including Ms.

17   Alfonso, in New England was conducted.  The results of that

18   review show that Ms. Alfonso was one of the highest

19   prescribers of Subsys in New England and nationwide.

20          Additionally, the evidence would establish beyond a

21   reasonable doubt that a further review of Medicare Part D and

22   private insurer of prescription drug events for prescribers

23   of Subsys in New England show that Ms. Alfonso was

24   responsible for over 1.6  million dollars in Subsys claims

25   and was the highest prescriber of this particular drug here

1        in Connecticut.

2                The evidence would also consist of the testimony of

3        several Medicare Part D beneficiaries for whom Ms. Alfonso

4        prescribed Subsys.  Those individuals will testify that they

5        did not have a cancer diagnosis, but that prior

6        authorizations submitted on their behalf had represented that

7        they had cancer.  That would be important, Your Honor,

8        because Medicare Part D and many private insurers would not

9        pay for Subsys unless the person had an active cancer

10       diagnosis.

11               THE COURT:  Help me understand that last part.

12       You'd have effectively the patients testify that they didn't

13       have cancer but someone had said they had?

14               MR. MORABITO:  Correct, Your Honor.

15               THE COURT:  And who was the person that said they

16       had?

17               MR. MORABITO:  That's part of the --

18               THE COURT:  Investigation?

19               MR. MORABITO:  Correct, Your Honor.  I guess sort of

20       the critical point, Your Honor, at this point was that

21       Medicare Part D and many private insurers would not.

22               THE COURT:  They'd need an authorization in order

23       for her to be able to prescribe the drug?

24               MR. MORABITO:  Correct, Your Honor.

25               Additionally, Judge, the evidence would consist of

1    the fact that Ms. Alfonso was a speaker with a term of

2    speaker for Insys Therapeutics for over 70 speaker programs.

3              By way of background, Judge, the evidence would

4    establish that a speaker program would be -- it's basically a

5    dinner at a nice restaurant somewhere in Connecticut where

6    someone like Ms. Alfonso was supposed to provide a

7    presentation about the benefits of Subsys for patients and

8    the appropriate uses for it, et cetera.

9              The evidence would establish that she was paid about

10   one thousand dollars per speaking engagement, so per dinner,

11   that she participated in.  And that, also, the meal would be

12   paid for by Insys Therapeutic representatives.

13             THE COURT:  And the thousand dollars was also by

14   Insys?

15             MR. MORABITO:  Correct, Your Honor.

16             The evidence would establish, Judge, that in many

17   instances -- probably in the majority of instances, Your

18   Honor, the only attendees at the speaker programs were

19   individuals who had no license to prescribe controlled

20   substances, people like medical assistants, receptionists,

21   friends, or co-workers.  And, therefore, there was no benefit

22   from hearing a presentation about Subsys.

23             Additionally, Judge, the evidence would establish

24   beyond a reasonable doubt that at the majority of these

25   dinner programs Ms. Alfonso did not give any kind of

1    presentation about Subsys at all.  It was basically a social

2    engagement where everyone came to eat, drink, and it was paid

3    for by the Insys folks.

4            The evidence would additionally consist of certain

5    dinners, Your Honor, that the only people in attendance were

6    Ms. Alfonso and the sales representative of Insys

7    Therapeutics.

8            The evidence would establish that from January 2013

9    until approximately March of 2015, she was paid, she being

10   Ms. Alfonso, was paid about $83,000.  Again, for the speaker

11   program that I just outlined.

12           The evidence would also consist of certain

13   statements made by Ms. Alfonso that effectively, Judge, the

14   sales representatives who she dealt with from Insys

15   Therapeutics arranged the speaker programs for her and

16   continued to schedule these programs for the purpose of being

17   able to pay Ms. Alfonso this thousand dollars that I talked

18   about and pay for her meal for her and her friends and

19   co-workers.  In exchange, the evidence would I think

20   directly, but also circumstantially prove that Ms. Alfonso

21   continued to increase her prescribing of Subsys and to find

22   more patients for whom she could prescribe the drugs.  In

23   fact, Judge, oftentimes there would be some documentary

24   evidence if there was a trial that would show that the reps

25   were asking Ms. Alfonso for help in increasing number of

1    prescriptions that were being written so that the Subsys

2    numbers would also increase.

3          Additionally, Ms. Alfonso admitted that the money

4    she was paid influenced her prescribing of Subsys.

5          So I think, Judge, that in light of all of that, it

6    would prove beyond a reasonable doubt that Ms. Alfonso is

7    guilty of the offense charged in the information.

8          THE COURT:  Thank you, Attorney Morabito.

9          All right, Ms. Alfonso, let me start by asking, is

10   there anything that you want to correct or modify about what

11   the Government said?  If you need to take a minute to speak

12   to Mr. McGuigan, that's fine.  You can have privacy to do

13   that, too.

14         MR. McGUIGAN:  One moment, Your Honor.

15         THE COURT:  Yes.

16         MR. MORABITO:  Judge, I'll clarify one thing.  If I

17   was unclear, I apologize.

18         Because I think what I understand what Ms. Alfonso's

19   concern is, through counsel, at this point I'm not proffering

20   that Ms. Alfonso is the one who submitted the claims for

21   authorization or that she's the one that made the

22   misrepresentations.  Maybe the evidence is developed that

23   supports that and maybe it isn't developed to support that,

24   but I'm not making that proffer to Your Honor at this point.

25         THE COURT:  Okay.  I'm glad you mentioned that.  I

1   take it, is it correct, that part of the Government's proof

2   at trial would be that, first of all, the treatment

3   prescribed, the Subsys, was not medically necessary?

4          MR. MORABITO:  Judge, I'm glad you asked.  That's

5   not what we're claiming.

6          THE COURT:  I'm glad you pointed that out.

7          So it's essentially an over-utilization case?

8          MR. MORABITO:  Can I have one moment, Your Honor?

9          THE COURT:  Yes.

10         MR. MORABITO:  I think, Judge, the way we would

11  characterize it is that Ms. Alfonso is being paid to

12  prescribe Subsys effectively on what they call off label

13  here, for people who she thinks she's entitled to prescribe

14  it to, although Medicare won't pay for it.  But she's being

15  paid and that's influencing her decision to prescribe the

16  drug.

17         THE COURT:  So even whether or not there's

18  over-utilization here, the case is simply that she received

19  remuneration in exchange for prescribing Subsys to patients

20  whose treatment was paid for by the Federal Government.

21         MR. MORABITO:  Correct, Your Honor.

22         THE COURT:  Mr. McGuigan, did you want to add

23  anything, sir?

24         MR. McGUIGAN:  That's essentially what our

25  understanding is.

1           THE COURT:  Thank you.  All right.  Ma'am, I do want

2    to ask you some questions about that.

3           First of all, is it correct that through the speaker

4    program you received something in the neighborhood of $83,000

5    from Insys?

6           THE DEFENDANT:  That is correct, Your Honor.

7           THE COURT:  And is it correct that the -- that you

8    understood that that money was being paid to you by Insys,

9    either in whole or in part, in return for your prescribing

10   their drug?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  And is it also true that those dinners

13   were pretty much what Attorney Morabito described?  In other

14   words, that sometimes there wasn't really much of an audience

15   there, sometimes you really didn't speak, and the audience,

16   in any event, didn't consist of licensed DEA prescribers.  Is

17   that true?

18          THE DEFENDANT:  That is true, Your Honor.

19          THE COURT:  And is that something that you

20   understood at the time?

21          THE DEFENDANT:  Yes, Your Honor.  However, I was not

22   the one responsible to get attendees.

23          THE COURT:  Let me just be clear.  You understood at

24   the time that you were receiving these payments, in whole or

25   in part, in return for your prescribing Subsys, is that

1    true?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Would the Government have me inquire

4    further?

5              MR. MORABITO:  No, Your Honor.

6              THE COURT:  All right, ma'am.  If you're still

7    willing to plead guilty, it is time for you to do that.  So

8    you should at this point stand.  And you have a right to have

9    the entire charge read to you.  You can also choose to waive

10   a reading of the charge.  Do you wish to waive a reading of

11   the charge?

12             MR. McGUIGAN:  We will waive that, Your Honor.

13             THE COURT:  Okay.  At this time I'm going to ask the

14   Clerk of the Court to put you to plea.

15             THE CLERK:  In the case of United States of America

16   v. Heather Alfonso, criminal number 15CR111(MPS).  As to

17   Count One of the Information charging you with violation of

18   Title 42, United States Code, Section 1320a-7b(b)(1), how do

19   you plea?

20             THE DEFENDANT:  Guilty.

21             THE CLERK:  Your Honor, the defendant has pled

22   guilty to Count One of the Information.

23             THE COURT:  Does either counsel know of any reason I

24   should not accept this guilty plea?

25             MR. MORABITO:  No, Your Honor.

1          MR. McGUIGAN:  No, Your Honor.

2          THE COURT:  On the basis of the Plea Agreement, the

3    answers to the questions by the Court given by the Defendant

4    under oath, on the record, and in open Court, and in the

5    presence of her counsel, on the basis of the remarks of

6    defense counsel, the remarks of the Assistant United States

7    Attorney, I find as follows:

8          1.  That the Defendant is fully competent and

9    capable of entering an informed plea.

10          2.  That she understands the nature of the charge to

11   which she's pled guilty.

12          3.  That she understands her rights.

13          4.  That she understands the possible consequences

14   of her guilty plea.

15          5.  That she's chosen to plead guilty because she

16   is, in fact, guilty of the offense charged.

17          6.  That the plea of guilty is a knowing and

18   voluntary plea, supported by an independent basis in fact,

19   containing each of the essential elements of the offense.

20           The Defendant's plea is accepted and she is

21   adjudged guilty of the offense to which she's pled guilty.

22          A finding of guilt will enter and the case is

23   referred to the U.S. Probation Office for a Presentence

24   Investigation.

25          All right, ma'am, the next thing that's going to

1    happen in this case is that a probation officer is going to

2    interview you in the presence of your lawyer and prepare, on

3    the basis of that interview and other investigative work, a

4    Presentence Investigation Report.  That's the report I talked

5    about earlier.  As I said, that report will be submitted to

6    me to assist me in determining an appropriate sentence.

7          When you meet with the probation officer, please

8    keep in mind that the probation officer works for the Court,

9    not for the prosecutor.  So your cooperation with the U.S.

10   Probation Officer will generally benefit you.  However, it's

11   important to carefully discuss with your attorney what you

12   say to the probation office, because the Presentence Report

13   is very important in the calculation of your Guidelines range

14   and in the consideration of your sentence.  So please, when

15   you see the draft report, read it and review it carefully

16   with your lawyer.  I'm going to ask you at your sentencing if

17   you've read it, if you've understood it, and if you've given

18   any response you have to it to the Probation Office or your

19   attorney.

20         Ms. Alfonso's currently on release.  Is there any

21   application for a change in that status?

22         MR. MORABITO:  No, Your Honor.

23         THE COURT:  All right.  We're going to set the

24   schedule.

25         The deadline for the draft of the Presentence Report

1   to be disclosed to counsel is August 4th, 2015.  Within 14

2   days after receiving the report, namely by August 18, 2015,

3   counsel will be required to submit any objections in writing.

4   And then ten days thereafter, specifically by August 28,

5   2015, the Probation Office will be required to submit the

6   final Presentence Report and any addenda to the Court.

7        The defendant's Sentencing Memorandum will be due on

8   September 4th.  The Government's response will be due on

9   September 9th.  And any reply by the defendant must be filed

10  by September 14th.

11        Sentencing is scheduled for September 17th at 3:30.

12  Actually, let's make that 3:00.  Bear with me one second.

13  Let's make it 3:15.  I may have have a trial that day so

14  let's make it 3:15.

15        All right.  Lastly, Ms. Alfonso, I don't expect a

16  problem with this, but I'm required to inform you that if for

17  any reason you fail to appear at sentencing, that would be a

18  violation of a court order as well as a separate offense and

19  could subject you to additional penalties.  Do you understand

20  that?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  Is there any further business to take

23  up?

24        MR. MORABITO:  No, Your Honor.  Thank you.

25        MR. McGUIGAN:  No, Your Honor.

1          THE COURT:  Thank you.  We'll be in recess.

2          (Concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           C E R T I F I C A T E

2

3           I, Martha C. Marshall, RMR, CRR, hereby certify that

4    the foregoing pages are a complete and accurate transcription

5    of my original stenotype notes taken in the matter of UNITED

6    STATES V. HEATHER ALFONSO, which was held before the

7    Honorable Michael P. Shea, U.S.D.J, at 450 Main Street,

8    Hartford, Connecticut, on June 23, 2014.

9

10

11

12                            _____

                              Martha C. Marshall, RMR,CRR
13                            Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25