UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          3:15-cr-00111(JBA)

v.

HEATHER ALFONSO
Defendant.          NOVEMBER 11, 2019

### SENTENCING MEMORANDUM OF DEFENDANT HEATHER ALFONSO

Through counsel, the defendant Heather Alfonso submits the following Sentencing Memorandum setting forth the factors that the Court should consider in determining a sentence that is sufficient, but not greater than necessary, to comply with the statutory factors of 18 U.S.C. § 3553(a). As will be set forth more fully in greater detail, based upon the application of the relevant factors to Ms. Alfonso's case, the defendant moves for a non-guidelines, non-custodial sentence, the appropriateness of which is to be determined by this Court at its discretion.

**I.**     **APPLICABLE LAW**

The Court must impose a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Title 18, United States Code § 3553(a) provides a litany of factors for the Court to consider in making its determination of a reasonable sentence, of which the following are the most pertinent here:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed –

         A.     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

1

> B. to afford adequate deterrence to criminal conduct;
>
> C. to protect the public from further crimes of the defendant; and
>
> D. to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, §3553(a) further directs sentencing courts to consider the following factors:

> 1) "the nature and circumstances of the offense and the history and characteristics of the defendant." (Section 3553(a)(1));
> 2) "the need for the sentence imposed" (Section 3553(a)(2));
> 3) "the kinds of sentences available" (Section 3553(a)(3));
> 4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." (Section 3553 (a)(6)); and
> 5) "the need to provide restitution to any victims of the offense." (Section 3553(a) (7))."

Since *United States v. Booker*, 546 U.S. 220 (2005) wherein the Guidelines were held to be advisory rather than mandatory, the power of the guidelines over sentencing has continued to erode. No longer is a Guideline range presumed to be a one-size-fits-all solution to determining a sentence.

> Even where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the § 3553(a) sentencing factors. Under § 3553(a)'s "parsimony clause," it is the sentencing court's duty to "impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth" at 18 U.S.C. § 3553(a)(2).

*United States v. Dorvee*, 604 F.3d 84, 93 (2d Cir. 2010) (citation omitted), *opinion amended and superseded on other grounds*, 616 F.3d 174 (2d Cir. 2010); see also 18 U.S.C. § 3661 ("no limitation shall be placed on the information concerning the

background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added)).

The Second Circuit has described sentencing in the post-*Booker* world thus: "It is now . . . emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and the defense. District judges are, as a result, generally free to impose sentences outside the recommended range." *United States v. Cavera,* 550 F.3d 180, 189 (2008). And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. *See United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005)(after consideration of the Guidelines and the factors set forth in section 3553(a), the sentencing court is free to impose either a Guidelines or a non-Guidelines sentence, in light of the appropriate factual findings); and *United States v. Brady*, 417 F.3d 326, 33 2d Cir. 2005)(the sentencing court "need not impose a Guidelines sentence, and may, if doing so would be reasonable, lower the sentence below the Guideline range even when a downward departure is unavailable.").

Today, the applicable Guideline range "represents the Sentencing Commission's considered opinion about what the sentence should be in an 'ordinary' case, and therefore serves as the district court's starting point in selecting a sentence. The §

3

3553(a) factors, in turn, provide the sentencing judge with a set of criteria for potential variances, based on the nature and circumstances of the offense and the history and characteristics of the defendant, among other factors." *U.S. v Dorvee, supra.* at 92 (citations and quotations omitted; emphasis added).

II. **APPLICATION OF THE RELEVANT SENTENCING FACTORS TO THE FACTS OF THIS CASE**

In the instant case, the following relevant factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

    A. **The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

    a. **Nature and circumstances of the offense**

On June 23, 2015, Ms. Alfonso appeared in the United States District Court at Hartford, Connecticut before the Honorable Michael P. Shea. Then and there, she waived indictment and entered a guilty plea to a one-count information charging Receipt of Kickback in Relation to a Federal Healthcare Program, in violation of 42 U.S.C. § 1320a-7b(b)(1). The offense conduct consisted of a scheme whereby Ms. Alfonso, an Advanced Practice Registered Nurse (APRN) working at Comprehensive Pain and Headache Treatment Centers, LLC, with locations throughout Connecticut, wrote prescriptions for a cancer pain-management drug called Subsys in return for payments (falsely claimed to be educational speaking fees) from Insys, the company that sold the drug and designer of the scheme, at an illicit loss to the Medicare program that the Government calculates, in her case, to be $2,564.501.64. On April 19, 2018, the case

4

was transferred to the Honorable Janet Bond Arterton. Sentencing is scheduled for November 26, 2019 at 10:00 a.m.

b.   **History and characteristics of Ms. Alfonso**[1]

**Family History**. Ms. Alfonso was born on January 5, 1973 in Tokyo, Japan, to the marital union of Louis Marrone and Margaret Marrone, now both 75 years old. Her father served in the United States Air Force, and she was born abroad on a military base as a United States citizen, as her birth certificate indicates. When she was an infant, her parents moved to Middlebury, Connecticut where she resided until she was 18 years old. She had two younger sisters: one, Lesley Anderson, died this year at 40 of a pulmonary embolism; the other, Alexis Colson, 44, resides in Vienna, Virginia. Both parents live with Ms. Alfonso in Conway, South Carolina. Her father is a retired owner of a tile company and her mother is a retired teacher.

Ms. Alfonso describes growing up in a middle class working family. Her father was strict. She describes him as not very affectionate, and very focused on making money, advising her that "if you're not going to go out there and make money, someone else is," a work mentality which spread through the whole family. She described her mother as very loving.

Ms. Alfonso describes her childhood as normal until she was 12 years old, when her grandfather molested her. She told her cousin before going to her parents, who merely admonished her to not go to her grandparents' house anymore. She later

---

[1] The sections of this Sentencing Memorandum concerning Ms. Alfonso's family history, education, employment, criminal history, family circumstances and ability to pay are adopted, with only slight variation, from the United States' Probation Officer's Presentence Report (PSR) filed with this Court on October 17, 2019, Docket Entry No. 51.

learned that her grandfather also molested both of her sisters, two cousins and an aunt. Since the incident, she reports she has trust issues, persistent to this day, affecting her relationship with her own parents and how she parents her own children; she reports she sometimes does not trust her own parents, and has issues with leaving her children in daycare or alone with anyone but herself.

Ms. Alfonso was an average student in high school, and without disciplinary issues. She reports being in an abusive relationship while in high school; she told her school counselor and went into counseling to deal with the situation. At some point the Middlebury Police Department was made aware of the abuse, but no arrest was made.

Ms. Alfonso moved to Jacksonville, North Carolina when she was 18, and lived there for a short period before moving to Brunswick, Georgia. She returned to Middlebury when she was 19. She resided in Waterbury, Connecticut a few years later, with her then-husband Anthony Alfonso, and when they divorced in 2000, when she was 26, she moved back in with her parents. She then bought a house Oakville, Connecticut with her current boyfriend Joudat Elmassri sometime after they met in 2002. At some point they sold the Oakville house and moved in with her parents, eventually buying the parental house, where they resided until her arrest in 2015. When she subsequently moved to Monroe, North Carolina for Mr. Elmassri's employment in 2017, she placed the deed in her sister Lesley's name. On the day Lesley died in 2019, Ms. Alfonso learned that the house was in foreclosure because her sister had not been paying the mortgage. Her parents were forced to move in with her and Mr. Elmassri, as they had nowhere to live. The family resides in a trailer with her three children.

**Marital and Personal Relationships.** Ms. Alfonso was married to Anthony Alfonso from 1995 to 2000. The couple had three children: Marina, 25, who lives in Tampa, Florida, and is in the process of enlisting in the Army; Anthony Jr., or "AJ," 23, who lives in Hawaii; and Marcus, 22, who is in the Air Force and stationed in North Carolina. Ms. Alfonso reported that she left the marriage because of her husband's drug addiction. While they were married, he was a culinary arts teacher at Johnson and Wales University. She reports that when he was sober, the relationship was positive, but when his drug use became too much for her, she filed for divorce. She reports that her last communication with her ex-husband was when their daughter Marina brought him to a Veterans Affairs halfway house in Tampa.

Ms. Alfonso reports having a good relationship with her daughter Marina. She has had more troubled relationships with her sons. Anthony Jr. has had issues with drug use and depression, and she reports that the resented his parents for a long time because he did not think he was raised well. She has made attempts to reconcile with him. Marcos was a difficult child to raise because he was always getting into trouble. Marcos was living with his grandparents until her they lost their home, because Ms. Alfonso had difficulty coping with his issues. She reports they have since reconciled and now they get along well.

Ms. Alfonso has been in a relationship with Joudat Elmassri since 2002, and they have two children together, Kyle, 14, and Alexis, 11. She reports that when she was working as a nurse, he was a stay-at-home father and homeschooled their children. After her arrest, Mr. Elmassri returned to work, in construction, and subsequently his employers transferred him to South Carolina, which is why they moved. He now owns

his own tile company which he works at full time. While the couple separated briefly in 2013, they reconciled and she characterizes their relationship as good. She currently homeschools Kyle and Alexis and reports that she enjoys a good relationship with them as well.

**Physical, Mental and Emotional Health.** Ms. Alfonso reports that in 2008 she was diagnosed rheumatoid arthritis and anti-phospholipid syndrome, the latter a blood clotting disorder. She and her current doctor believe that the arthritis diagnosis was erroneous, and that she actually has fibromyalgia. She is currently prescribed Neurontin, Cymbalta, Meloxicam and Flexeril. She reports that she has been diagnosed with depression, anxiety and bipolar disorder.  Ms. Alfonso reports that she went into depression following her arrest in this matter, wherein she "closed up" to people, had suicidal thoughts for the first time in her life, and had manic episodes. She felt she could not keep her life together in the wake of the arrest, and that she needed help. She started to see a counselor in South Carolina over a year ago, Angel Livingston-Onely, who was going to send her to an in-patient facility if she did not seek out a psychiatrist for treatment. Ms. Alfonso reports that she was planning to admit herself into a treatment facility, but her sister's death and her need to return to Connecticut to help her parents interrupted her plan.  She has been seeing Dr. Rosen out of Charleston, South Carolina for the past six months for psychiatric treatment, and she reports that she is benefitting from the treatment. Dr. Rosen is prescribing Cymbalta and Depakote. She reports that treatment has improved her mental health and that she is able to recognize the cycles of her bipolar disorder.

**Substance Use**. Ms. Alfonso does not abuse drugs or alcohol, and has never received treatment.

**Education and Vocational Skills**. Ms. Alfonso graduated from Holy Cross Highs School in Waterbury, Connecticut in 1991. She obtained her Associate's Degree in Science Nursing from Excelsior College in Albany, New York in 1997; she returned to that institution in 2001 and graduated with a Bachelor's Degree in Liberal Arts with a focus on Health Professions in 2006. She obtained her master's degree in nursing from Liberty University in Lynchburg, Virginia in 2012. She held licenses as a registered nurse and as an APRN, which she surrendered after her arrest and has not renewed them. She was the subject of a consent order issued by the State of Connecticut's regulatory authority for improper prescription of opioids to a patient in 2012, wherein she agreed to give up her license and pay a $2,000 fine. In addition to her nursing licenses, Ms. Alfonso held an Emergency Medical Technician license which she let lapse, and a Controlled Substance Registration for Practitioner License for Schedule 2, 3, 4, and 5 substances, now expired.

**Employment and Financial Status.** Ms. Alfonso was an APRN from 2010 until her arrest in 2015. In that timeframe she worked at Comprehensive Pain and Headache Treatment Center in Meriden and Derby, Connecticut, earning $100,000 a year, until her employer terminated her following her arrest. In 2015, she also worked as a labor and delivery nurse at Saint Mary's Hospital in Waterbury, Connecticut, and she lost that job as well due to her arrest. Between 2015 and 2018 she worked part-time for a tarot card reading hotline. In 2018 she opened Sacred Garden, in Conway South Carolina,

which she describes as an apothecary shop specializing in holistic medicine and religious products.

**Financial Condition: Ability to Pay.** The Defendant refers the Court to the United States Probation Officer's Presentence Report for Ms. Alfonso's Net Worth and Monthly Cash Flow statements, summary of her credit report and tax returns, and its assessment of her financial condition. The Defendant adopts the U.S. Probation Officer's conclusion at ¶8 of the Presentence Report that "based upon Ms. Alfonso's current financial situation, her likely future earnings, and the mandatory restitution in this case, it appears that she does not have the ability to pay a fine within the Guideline range.

**Criminal History.** Ms. Alfonso has no prior criminal history.

B.   **The Need for the Sentence Imposed to Promote Certain Statutory Objectives**

a.   **To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

Although the crime to which Ms. Alfonso pleads is of a highly serious nature, the offence is not of a heinous, brutal or violent nature. She is remorseful and regretful of her conduct, and by promptly accepting a guilty plea, she has demonstrated affirmative responsibility for her actions and a desire to face the consequences. Moreover, she took additional affirmative steps toward righting her wrong by testifying for the government at the trial in Federal Court in Boston of Insys' principals, the architects of the scheme in which she participated at ground level, which ultimately resulted four convictions,

including that company's CEO.[2] She has gone further than expressions of regret and swift acceptance of responsibility, by actively assisting the government in its efforts to bring to justice those higher up the ladder who committed wrongdoing. Because of Ms. Alfonso's assistance to the government, a more lenient sentence departing from the Guidelines is sufficient to promote respect for the law and provide for just punishment.

      **b.**      **To afford adequate deterrence to criminal conduct**

In terms of just punishment and deterrence to criminal conduct, the undersigned counsel adduces the collateral consequences of Ms. Alfonso's conduct. Ms. Alfonso understands that as a result of her engaging in a kickback scheme involving the public purse and our healthcare system, she has contributed harm to society. Further, she has suffered mental health consequences, the loss of her home and her aged parents' home, the loss of her vocation along with the likelihood that she will never make a comparable livelihood again, and a grim appreciation of the waste of time, talent and treasure that she put into achieving the nursing licenses she sacrificed to her greed. A strict Guidelines sentence is not necessary to serve the purposes of the statutes she violated. A more lenient non-Guidelines sentence is adequate deterrence, especially in light of her cooperation with the Government in its prosecution of Insys.

      **c.**      **To protect the public from further crimes of the defendant**

Ms. Alfonso lived a blameless life until close to her fortieth year, and until then her vocation committed her to helping the sick and infirm. Her involvement in a criminal scheme was motivated by greed, and no-one is more aware than she that such greed

---

[2] *See* media accounts of her testimony and the verdict, e.g. https://www.bloomberg.com/news/articles/2019-02-12/opioid-nurse-sold-out-patients-for-82-000-in-insys-kickbacks; https://www.usatoday.com/story/news/nation/2019/05/02/insys-therapeutics-john-kapoor-found-guilty-fentanyl-bribery-case/3561518002/

only brought ruin upon her. She has gone from making $100,000 a year annually to being banished from her profession and left penurious. She has learned the hard way that her choice was wrong and destruction. There is no chance of further criminal activity.

      **d.**      **To provide the defendant with the needed educational or vocational training, medical care or other correctional treatment in the most effective manner.**

The U.S. Probation Officer, in the Presentence Report, helpfully lists a variety of mental health programs offered within our federal penal system. With no disrespect intended to the rehabilitative opportunities afforded by the Bureau of Prisons, Ms. Alfonso's therapeutic needs are more than satisfied outside prison walls with the treatment she is currently undergoing with her chosen therapists, and with the support of her partner and their children.

      **C.**      **The Kinds of Sentences Available**

In *United States v. Booker, supra*, 543 US at 244, the Supreme Court severed and excised 18 U.S.C.§ 3553(B), the portion of the Sentencing Guidelines that made it mandatory for courts to sentence within a particular sentencing range; this rendered the Guidelines purely advisory. Because the Guidelines are advisory, the Sentencing Table and restrictions on probationary status are also advisory. In *Gall v. United States*, the Court held that a sentencing court should look not for "extraordinary circumstances" to justify a sentence outside the Guidelines range. *Gall, supra*, 552 U.S. at 47. In Ms. Alfonso's case, this Court may therefore, upon weighing the relevant factors against the unique facts on the record, impose a non –Guidelines sentence.

      **D.**      **The Sentencing Range Established by the Guidelines**

12

ROME MCGUIGAN, P.C.
One State Street-13th Floor, Hartford, CT 06103-3101 • (860) 549-1000 • (860) 724-3921 Fax

Ms. Alfonso, through counsel, adopts the sentencing range as presented in the Plea Agreement with the United States Attorney's office and as analyzed in the U.S. Probation Officer's Presentence Report. Therefore, the parties agree, *inter alia*: the guideline for 42 U.S.C. § 1320A-7B (B) (1) offences is found in USSG § 2B4.1 (a). which states that the base offence level is **8**. Regarding specific offender characteristics, that pursuant to USSG § 2B4.1b) (1) and the table at USSG § 2B1.1 (b) (1) (I), the value of the improper benefit attributed to Ms. Alfonso is $2,564,501.64, and therefore the base offense level increases by **16** levels. An upward adjustment for Ms. Alfonso's role in the offense based upon her position and special skill as a nurse merits an increase by **2** levels under USSG § 3B1.3. A decrease of **2** levels for acceptance of responsibility is merited under USSG § 3B1.3. In anticipation of the government's motion for decrease by **1** additional level for Ms. Alfonso's assistance to the authorities in prosecuting her own case by reason of her swift entry of a guilty plea, the United States Probation Officer recognized such a decrease, under USSG § 3E1.1.(b). The total offense level is therefore **23**. This would result in a range of 46 to 57 months of imprisonment, a fine range of $10,000 to $100,000 and three years of supervised release.

### III.   MOTION FOR A NON-GUIDELINES SENTENCE

Ms. Alfonso respectfully moves for a non-guidelines, non-custodial sentence. Grounds for the defendant's request include: 1) Ms. Alfonso's acceptance of responsibility; 2) her sincere remorse and regret; 3) her affirmative cooperation with the government in its prosecution of the principals of Insys.

The Government has acknowledged that Ms. Alfonso has accepted responsibility and expressed remorse by promptly agreeing to a guilty plea. Said plea reflects her sincere remorse as well as a desire to spare the Government additional time and expense on her account. She has gone further in her effort to make right the wrong she committed by participating as the Government's witness at the trial in Boston of Insys' principals, laying out for the jury the corrupt sales scheme that led to her arrest, and playing a part in the ringleaders' conviction. Now, stripped of her livelihood but with the support of her loving family, she now seeks to put the broken pieces of her life together, and humbly asks this court for leniency. With this in mind, Mr. Alfonso humbly requests that this Court hand down a less strict, non-guidelines, non-custodial sentence.

THE DEFENDANT
HEATHER ALFONSO

By: _____
A Ryan McGuigan
CT24571
Rome McGuigan, P.C.
One State Street, 13th Floor
Hartford, CT 06103-3101
860-549-1000
860-724-3921 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11th, 2019, Defendant's Sentencing Memorandum was electronically filed with the United States District Court, District of Connecticut and was served by Electronically Filed on all parties in this case who are unable to accept electronic filing. Notice of this filing will be sent electronically to all registered E-filers in this case by operation of the Court's electronic filing system as

indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

_____
A Ryan McGuigan

19279-2/MX0931